IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SELECTIVE WAY INSURANCE COMPANY, *A/S/O J.E. BERKOWITZ*, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 14-3457 (JBS/KMW) |
| v. | |
| GLASSTECH, INC., JOHN DOES 1-10, and ABC COMPANIES 1-10, | **OPINION** |
| Defendants. | |

APPEARANCES:

Steven A. Kluxen
ZIRULNIK, SHERLOCK & DEMILLE
1395 Yardville-Hamilton Square Road
Suite 202
Hamilton, N.J. 08691
      Attorney for Plaintiff

William C. Mead, Jr.
LITCHFIELD CAVO LLP
1800 Chapel Avenue West
Suite 360
Cherry Hill, N.J. 08002
      Attorney for Defendant

**SIMANDLE, Chief Judge:**

I.   **INTRODUCTION**

In this action, Plaintiff Selective Way Insurance Company asserts, as subrogee of J.E. Berkowitz (collectively, "Berkowitz" or "Plaintiff"), that Defendant Glasstech, Inc.'s (hereinafter, "Defendant" or "Glasstech") negligent "troubleshooting" of Berkowitz's glass annealing oven caused an explosion, resulting in the substantial destruction of its

fabrication facility in New Jersey.  In connection with these "troubleshooting" services, JEB accepted a **"QUOTATION"** (hereinafter, the "Quotation") that stated, in emphasized terms, that "ALL ORDERS ARE SUBJECT TO THE TERMS AND CONDITIONS STATED IN GLASSTECH'S GENERAL TERMS AND CONDITIONS OF SALE" (hereinafter, the "General Terms" and together with the Quotation, the "service agreement").[1]  Those General Terms contained a forum-selection clause setting Toledo, Ohio as the place where any litigation arising from the parties' agreement must be brought.  The present motions requires a determination of whether the General Terms are enforceable as part of the parties' agreement, and secondly whether the Ohio forum selection clause is enforceable and consonant with the statutory transfer provisions of 28 U.S.C. § 1404(a).

At the outset of this litigation, Defendant, in turn, moved to transfer this action to the Northern District of Ohio, pursuant to the "mandatory" forum-selection provision of the General Terms.[2]  [See Docket Item 4.]  On November 21, 2014, however, this Court found that undeveloped factual issues

---

[1] The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

[2] As an alternative to transfer, Defendant sought to dismiss Plaintiff's claims as barred by the General Terms' eighteen month limitations period.  Nevertheless, in light of the unresolved factual issues concerning the applicability of the General Terms, the Court did not reach Defendant's alternative position.

concerning the scope of the parties' service agreement placed the existence and application of the General Terms "in legitimate dispute." Selective Way Ins. Co. v. Glasstech, Inc., No. 14-3457, 2014 WL 6629629, at *5-*6 (D.N.J. Nov. 21, 2014) (hereinafter, the "initial transfer decision"). More specifically, the Court confronted the parties' sparsely developed and conflicting positions that the General Terms "constitute[d] a critical component of the [parties'] service agreement" (a position advanced by Defendant) and that the General Terms had no application to the parties' relationship (a position staked out by Plaintiff). Id. at *5. As a result, the Court denied Defendant's request to transfer, without prejudice to renewal (under a summary judgment standard) upon conclusion of pretrial factual discovery.[3] Id. at *6, *8.

Armed with a more robust factual record, Defendant now moves once more to transfer this action to the Northern District of Ohio under the forum selection clause of the General Terms.[4] [See Docket Item 23.] Guided by the additional discovery,

_____

[3] The Court then considered whether the general transfer inquiry (unabbreviated by any forum selection provision), 28 U.S.C. § 1404(a), supported Defendant's position. Selective Way Ins. Co., 2014 WL 6629629, at *7-*8. The Court found that "the private and public interests weigh[ed]," based upon that record, "heavily against transferring this litigation to the Northern District of Ohio." Id.

[4] In the alternative to transfer, Defendant seeks summary judgment on the grounds that the General Terms' limitations period bars Plaintiff's claims. (See Def.'s Br. at 23-26; see also Def.'s Reply at 7.)

Defendant takes the position that the General Terms "unquestionably" apply to this litigation, because the factual record reflects that Plaintiff accepted, wholesale, the service terms proposed by Defendant.  (Def.'s Br. at 14-20; see also Def.'s Br. at 3-7.)  In other words, Defendant claims that Plaintiff accepted the Quotation subject to the "plainly incorporated" and "commercially reasonable" provisions of the General Terms.  (See Def.'s Reply at 3-7.)  As a result, Defendant submits that this action should be transferred to the Northern District of Ohio pursuant to "the mandatory forum selection clause."  (Id. at 8.)

Plaintiff, by contrast, provides little, if any, substantive response to Defendant's positions on its receipt and acceptance of the service agreement.[5]  Indeed, Plaintiff acknowledges that its Maintenance Manager, Michael Gazzara, received an email containing the Quotation and General Terms and responded in order to accept the terms provided by Defendant.  (See Pl.'s Opp'n at 1-2, 4-9.)  Nevertheless, Plaintiff advances the view that the factual record contains no indication that it manifested assent to the "restrictive" and "limited" forum selection and limitations provisions.  (Id. at 2.)  Plaintiff then puts aside any enforceable forum selection clause, and

---

[5] Indeed, in opposition to Defendant's summary judgment motion, Plaintiff amassed an incredibly limited factual record that consists of little more than a legal brief.

4

submits that this action should remain in this forum for the reasons expressed in the initial transfer decision. (Id. at 1, 7.)

In addressing these competing positions, the Court emphasizes, at the outset, that Plaintiff mounts no factual challenge (genuine or otherwise) to the fact that Defendant performed repair services in accordance with a service Quotation, nor to the express incorporation of the General Terms into the agreed-upon Quotation. Indeed, Plaintiff admits nearly each of Defendant's statements of material fact.

Against that backdrop, the pending motion presents three relatively straightforward issues. First, the Court must consider whether the undisputed factual record demonstrates that Berkowitz agreed to be bound by the General Terms (inclusive of its forum-selection provision). Second, the Court must determine the enforceability of the forum-selection clause, if any. Finally, the Court must consider whether the circumstances of this action (aided by a forum-selection clause or not) warrant the transfer of this litigation.

For the reasons that follow, Defendant's motion will be granted to the extent it seeks transfer, and this action will be transferred to the Northern District of Ohio.

## II.  BACKGROUND

### A.  Factual and Procedural Background[6]

Berkowitz has manufactured architectural glass since 1920. (See, e.g., Ex. H to Mead Cert.)  In connection with that production, Berkowitz hired Glasstech in the late 1990s to install a glass tempering furnace in one of its New Jersey facilities.  (See Gazzara Dep. at 8:3-23.)

In September 2012, however, Berkowitz began experiencing issues with the furnace.  (See Def.'s SMF at ¶ 22; Pl.'s SMF at ¶ 22; Gazzara Dep. at 6:10-13.)  As a result, the Maintenance Manager, Michael Gazzara (hereinafter, "Gazzara"), contacted Glasstech in order to troubleshoot the issue over the telephone (as he had on prior occasions).  (See Def.'s SMF at ¶ 23; Pl.'s SMF at ¶ 23; Gazzara Dep. at 7:22-8:4.)  When that telephonic assistance failed to resolve the issues, however, Gazzara contacted Michael Walbolt (hereinafter, "Walbolt") of Glasstech to schedule an in-person visit by a service technician (again,

_____

[6] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment.  The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies.  See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., ___ F. Supp. 3d ____, 2015 WL 8335030 (D.N.J. Dec. 8, 2015) (disregarding portions of the parties' statements of material facts); Jones v. Sanko Steamship Co., Ltd., ___ F. Supp. 3d ____, 2015 WL 8361745 (D.N.J. Dec. 8, 2015) (same).

as had occurred previously).  (See Def.'s SMF at ¶ 26; Pl.'s SMF
at ¶ 26; Gazzara Dep.)  Following that conversation, on
September 11, 2012, Walbolt emailed Gazzara an agreement for the
"emergency service trip" with two attachments, "Q0007272.pdf"
and "GENERAL TERMS AND CONDITIONS OF SALE 020212.pdf," and
requested that Berkowitz "provide a P.O." so that the companies
could "firm up arrangements."[7]  (Ex. C to Mead Cert.; see also
Ex. A to Walbolt Cert.; Def.'s SMF at ¶ 28; Pl.'s SMF at ¶ 28.)

     The Quotation, identified as Quote No. Q0007272 and
attached as "Q0007272.pdf," itemized the costs and expenses for
a two day service trip to Berkowitz's facility, and stated, on
its face, that "UNLESS OTHERWISE SPECIFIED BELOW, ALL ORDERS ARE
SUBJECT TO THE TERMS AND CONDITIONS STATED IN GLASSTECH'S
GENERAL TERMS AND CONDITIONS OF SALE."  (Ex. B to Walbolt Cert.;
Def.'s SMF at ¶¶ 15-16; Pl.'s SMF at ¶¶ 15-16.)  The General
Terms attached to the email (and dated February 2, 2012),[8] in

---

[7] As detailed below, Walbolt carbon copied various Glasstech
employees on his email, each of whom independently confirmed the
contents of the email and its attachments.  (See, e.g., Ex. D to
Walbolt Cert.; Walbolt Cert. at ¶ 10.)

[8] In response to discovery requests from Glasstech, Berkowitz
indicated that it could not "locate any electronic record,
physical record or indicia of any kind" of the email exchange
between Walbolt and Gazzara (Ex. I to Mead Cert. at ¶¶ 25, 27,
29, & 30), because it "upgraded and replaced" the workstations
of Gazzara, among other employees, in 2013, and did not preserve
or retain emails between Berkowitz and Glasstech.  (Def.'s SMF
at ¶¶ 57, 69-75; see also Pl.'s SMF at ¶¶ 57, 69-75 (admitting
the upgrade, the inability to produce the relevant email
exchange, and stating "that the email may have been
inadvertently deleted or taken off the server" during the

7

turn, provided the following explanation concerning its scope and effect:

> Except as Glasstech, Inc. ("Seller") may otherwise agree in writing, the <u>quotation</u>, acknowledgement, invoice or agreement (signed by Seller) to which the <u>Glasstech General Terms and Conditions of Sale ("Terms and Conditions") is attached or refers to</u>, together with the terms on the face of the Seller's quotation, acknowledgement, invoice or agreement (signed by Seller) <u>shall govern and constitute the sole and complete agreement between Seller and its customer</u> ... relating to ... the provisions of services...

(Ex. C to Walbolt Cert. at ¶ 1 (emphases added).)  The General Terms then explained that the

> Agreement shall be governed by and construed and interpreted in accordance with the Uniform Commercial Code as adopted by the State of Ohio, and other applicable laws of the State of Ohio without application of conflict of laws principles.  Each party hereby (1) <u>irrevocably submits to the jurisdiction of the state or federal courts located in Toledo, Ohio, U.S.A., (2) agrees that any action, suit or proceeding arising from or relating to this Agreement shall be brought **only** in such Courts</u>, and (3) waives any objections based to personal jurisdiction, venue or forum *non conveniens* [, and that]
>
> Any action against Seller based upon Seller's alleged breach of its obligations <u>must be commenced within eighteen (18) months after Customer's receipt of the Equipment or the performance of the Services</u>.

---

update); Wojnar Dep. (generally explaining the technology upgrade and the deleting of information on older workstations).) Nevertheless, Berkowitz mounts no genuine challenge to the accuracy of the email exchange captured by the various Glasstech employees, nor to the fact that the email contained two attachments.  (<u>See, e.g.</u>, Def.'s SMF at ¶¶ 25-41; Pl.'s SMF at ¶¶ 25-41.)

(Id. at ¶¶ 11, 15 (emphases added).)  In other words, the
General Terms circumscribed to Toledo, Ohio the fora for any
litigation concerning the parties' service agreement, and
limited the time period for the filing of any action.[9]  (See
generally id.)

---

[9] In support of its position that it did not manifest assent to
the General Terms, Plaintiff makes much of the fact that
Defendant produced "three" versions of its "general terms and
conditions of sale," each with different forum selection and
limitations provisions.  (Pl.'s Opp'n at 3, 5, 8; see also Pl.'s
Supp. SMF at ¶¶ 6-11; Exs. A, B, & C to Kluxen Cert.)  In other
words, Plaintiff takes the view that the existence of these
different versions casts further doubt upon whether it agreed to
the particular General Terms at issue here, and renders
"untenable" the notion that Plaintiff knew of the "terms and
conditions" from prior service trips.  (Id.)  Nevertheless,
Walbolt carbon copied at least three Glasstech employees on his
September 11, 2012 email (containing the relevant attachments),
and each explains that they "opened" the email attachments from
Walbolt and that the document identified as "GENERAL TERMS AND
CONDITIONS OF SALE 020212.pdf" (and attached to their
certifications) contained the February 2, 2012 General Terms.
(See, e.g., Ex. D to Walbolt Dec. (identifying Steven M.
Connell, Thomas E. Noe, Randal Laubacher, and David M. Luttrell
as carbon copied recipients on Walbolt's September 11, 2012
email); Connell Cert. at ¶¶ 5, 7; Ex. C to Connell Cert.
(General Terms dated February 2, 2012); Noe Cert. at ¶¶ 5, 7;
Ex. C to Noe Cert. (General Terms dated February 2, 2012);
Luttrell Cert. at ¶¶ 5, 7; Ex. C to Luttrell Cert. (General
Terms dated February 2, 2012).)  Berkowitz, by contrast, offers
no contrary proofs.  Thus, the existence of different general
terms and conditions proves immaterial to the pending motion,
because the record contains no evidence to suggest that
Plaintiff (or, Gazzara) operated under the impression that it
had agreed to terms and conditions other than those contained in
the General Terms attached to Gazzara's email.  Nor does the
record suggest confusion or mistake, on Gazzara's part, about
the contours of the parties' service agreement.  Rather, the
undisputed factual record demonstrates that Gazzara understood
that the email contained a quotation and terms and conditions
(see Gazzara Dep. at 24:20-25:4, 36:2-11), but that he
essentially ignored the attachments, in an effort to "get the

9

Following receipt of Walbolt's email, Gazzara "[p]robably" opened the Quotation, but "didn't think" to open the General Terms, because of the paramount "importan[ce]" of getting "the machine running." (Gazzara Dep. at 16:24-17:2, 20:22-25, 35:20-21.) Nevertheless, Gazzara understood that the attached documents constituted Glasstech's "service agreement," that his approval would amount to an acceptance of the Quotation, and that terms and conditions accompanied service quotations, as a matter of course, with outside vendors.[10] (Id. at 14:21-15:7, 20:10-18, 24:20-25:4, 34:8-14, 36:2-11; see also Def.'s SMF at ¶¶ 31, 32, & 36; Pl.'s SMF at ¶¶ 31, 32, & 36.)

Having that understanding, and without reviewing the attachment identified as the "General Terms," Gazzara accepted the offer, asked Walbolt to "get the ball rolling," and provided a "PO number for service."[11] (Ex. C to Walbolt Cert.; see also Gazzara Dep. at 16:11-19 (explaining that he accepted the

_____

ball rolling" on repairs. (Ex. D to Walbolt Cert.; see also Def.'s SMF; Gazzara Dep.)

[10] Arthur Berkowitz, the President of Berkowitz, likewise testified that Berkowitz had agreed to be bound by some form of Glasstech's "general terms and conditions" in prior dealings. (Berkowitz Dep. at 31:15-20.) Indeed, Berkowitz uses terms and conditions in dealing with its own customers. (Def.'s SMF at ¶ 53; Pl.'s SMF at ¶ 53; Berkowitz Dep. at 50:21-51:14.)

[11] In accepting Defendant's offer, Gazzara carbon copied various Berkowitz employees on his email response, including the President of Berkowitz, Arthur Berkowitz, and the Director of Manufacturing, James Carrol. (See, e.g., Ex. D to Walbolt Cert.; Walbolt Cert. at ¶ 10.)

Quotation in order to get a service technician "on a plane out here"), 20:3-9 (same).)

Unfortunately, during the course of the repair work, the tempering furnace exploded, resulting in the "substantial[]" destruction of the Berkowitz facility. (Compl. at ¶ 3.) As a result, Plaintiff filed the Complaint in this action,[12] asserting claims for negligence, breach of warranty, and strict liability, on the grounds that the explosion resulted from the carelessness, negligence, and/or recklessness of the Glasstech employees.[13] (See generally id.) At the conclusion of limited discovery on the service agreement issues identified in the initial transfer decision, the pending motion to transfer followed with a summary judgment-style record.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also FED. R. CIV. P. 56(a).

---

[12] Defendant removed this action from the Superior Court of New Jersey on May 30, 2014.

[13] Plaintiff, the insurance carrier for Berkowitz, reimbursed it for the total loss allegedly derived from Glasstech's conduct, and brings this action as Berkowitz's subrogee in an effort to recover those sums.  (See Compl. at 1.)

In evaluating Defendant's motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, Plaintiff, and make every reasonable inference in that party's favor.  See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  An inference based upon "'speculation or conjecture,'" however, "'does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (citations omitted).  Rather, the non-moving party must support each essential element with concrete record evidence.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Where, as in the present case, the summary judgment movant seeks to enforce a term or condition of an alleged contract, the movant must establish the existence of that agreement without genuine dispute as to the existence of its material terms.  See, e.g., Celanese Ltd. v. Essex Cty. Improvement Auth., 962 A.2d 591, 600 (N.J. Super. Ct. App. Div. 2009).  If there is a genuine dispute of fact as to any essential element of the contract's existence, that dispute can only be resolved at trial.  The Court must first consider whether, upon the record

12

of this case, the General Terms bind the parties as part of their service agreement.

## IV.  DISCUSSION

### A.  The General Terms Set Forth a Valid, Enforceable, and Mandatory Forum Selection Clause that Governs the Parties' Service Agreement

#### 1.  Berkowitz Agreed to be bound by the General Terms

The Court rejects, at the outset, the notion that Berkowitz, a sophisticated commercial entity, never agreed to be bound by the General Terms.  (See generally Pl.'s Opp'n at 1-4.) Critically, Berkowitz concedes the following series of events:

    a.    Gazzara contacted Walbolt of Glasstech in early September of 2012, in order to schedule a service visit (see, e.g., Def.'s SMF at ¶¶ 22-26; Pl.'s SMF at ¶¶ 22-26; Gazzara Dep. at 11:21-12:22);

    b.    In the aftermath of the telephone call, at 9:41 A.M. on September 11, 2012, Gazzara received an email from Walbolt containing a Quotation "for an emergency service trip," with attachments, and a request for a "P.O. ... [to] firm up arrangements" (see, e.g., Def.'s SMF at ¶¶ 27-30; Pl.'s SMF at ¶¶ 27-30; Ex. D to Walbolt Cert.);

    c.    Gazzara understood that the attachments constituted Glasstech's service agreement, and that an affirmative response to Gazzara's email would amount to an acceptance of the Quotation (see, e.g., Def.'s SMF at ¶¶ 31, 36; Pl.'s SMF at ¶¶ 31m 36; Gazzara Dep. at 20:10-18, 24:20-25:4, 36:2-11);

    d.    With that understanding, Gazzara responded to the email at 9:52 A.M. on September 11, 2012, by stating, "Yes please get the ball rolling" and then providing a "PO number for service" (see, e.g., Def.'s SMF at ¶ 37; Pl.'s SMF at ¶ 37; Ex. D to Walbolt Cert.); and

e. Gazzara intended for his response to serve as an acceptance of Glasstech's offer, despite the fact that he "didn't think" to open the document entitled "GENERAL TERMS," and could not specifically recall whether he opened the Quotation (although he "probably" did so).[14] (See, e.g., Def.'s SMF at ¶¶ 33-34, 39; Pl.'s SMF at ¶¶ 33-34, 39.)

The Quotation that Gazzara accepted on behalf of Berkowitz, in turn, unambiguously explains that "**ALL ORDERS** ARE SUBJECT TO THE TERMS AND CONDITIONS STATED IN **GLASSTECH'S GENERAL TERMS AND CONDITIONS OF SALE**." (Ex. B to Walbolt Cert. (emphases added).) In other words, the Quotation amply communicated its express incorporation of a separate and attached[15] document containing material terms relative to the Quotation—here, the General Terms. See, e.g., Nova Corp. v. Joseph Stadelmann Elec. Contractors, Inc., No. 07-1104, 2008 WL 746672, at *3 (D.N.J. Mar. 18, 2008) (citations omitted) ("'Incorporation by reference [under New Jersey law] is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.'"). The

---

[14] Berkowitz does not dispute Gazzara's authority to enter into service contracts on its behalf. (See, e.g., Def.'s SMF at ¶ 25; Pl.'s SMF at ¶ 25; Berkowitz Dep. at 22:20-23:2 (explaining the authority of Gazzara to retain Glasstech to maintain or troubleshoot the tempering furnace).)
[15] Despite Berkowitz's failure to preserve an internal copy of the email exchange between Gazzara and Walbolt, the Court finds, as explained above, no genuine dispute that the attachment labeled "GENERAL TERMS AND CONDITIONS OF SALE 020212.pdf" contained a copy of the General Terms dated February 2, 2012.

clarity of this incorporation should have, in turn, placed
Berkowitz on notice of the potential need to engage in further
investigation or inquiry into the specific terms and conditions
of the parties' service agreement, particularly given Gazzara's
understanding that his approval of the Quotation would amount to
an acceptance of Glasstech's terms and his general familiarity
with terms and conditions accompanying service quotes. (Gazzara
Dep. at 14:21-15:7, 20:10-18, 24:20-25:4, 34:8-14, 36:2-11; see
also Def.'s SMF at ¶¶ 31, 32, & 36; Pl.'s SMF at ¶¶ 31, 32, &
36.)

Nevertheless, Gazzara conducted no further investigation or
inquiry. Rather, he accepted the Quotation on behalf of
Berkowitz (eleven minutes after his initial receipt), with
little attention given to the material terms, in an effort to
"get the ball rolling" and to expedite the arrival of the
Glasstech service technician. (Ex. D to Walbolt Cert.) Indeed,
Gazzara explained during his deposition that he "didn't think"
to open the document entitled "GENERAL TERMS AND CONDITIONS OF
SALE 020212.pdf" and that he had little, if any, concern for the
Quotation or the expense because Berkowitz wanted to do
"whatever" it could "to get [the furnace] running as quick" as
possible. (Gazzara Dep. at 16:11-19, 20:3-25, 35:14-36:1.)

Nevertheless, accepting an offer "'creates a conclusive
presumption that the signer read, understood, and assented to

15

its terms.'" _Giaccone v. Canopius U.S. Ins. Co._, 133 F. Supp.
3d 668, 674 (D.N.J. 2015) (quoting _Raiczyk v. Ocean Cnty._
_Veterinary Hosp._, 377 F.3d 266, 270 (3d Cir. 2004) (quoting
_Fleming Cos., Inc. v. Thriftway Medford Lakes, Inc._, 913 F.
Supp. 837, 842–43 (D.N.J. 1995))).  For that reason, a party
cannot escape the conditions of an agreement by failing to
review an expressly incorporated _and_ attached portion, on
account of its "'own negligence.'"  _Id._ (citations omitted).
Nor, in the world of commercial contracting, does the
presentation of conditions on an adhesive (or "take-it-or-leave-
it") basis call into question the enforceability of the
conditions.  _Bonanno v. Quiznos Master LLC_, No. 06-1415, 2006 WL
3359673, at *5 (D.N.J. Nov. 16, 2006) (citing _Alexander v._
_Anthony Int'l, L.P._, 341 F.3d 256, 265 (3d Cir. 2003)); _see_
_Union Steel Am. Co. v. M/V Sanko Spruce_, 14 F. Supp. 2d 682, 686
(D.N.J. 1998) (same).

Rather, "the 'critical inquiry'" concerns whether the
Quotation "'reasonably communicated'" the General Terms, not
whether Berkowitz "actually read or negotiated" the provisions.
_Selective Way Ins. Co._, 2014 WL 6629629, at *5 (quoting _Jordan_
_Acquisition Grp., LLC v. Adam Techs., Inc._, No. 09-542, 2009 WL
2473987, at *6 (W.D. Pa. Aug. 12, 2009) (citing _Marek v. Marpan_
_II, Inc._, 817 F.2d 242 (3d Cir. 1987))).  Here, though, the
Quotation _unquestionably_ communicated the existence and effect

16

of the General Terms, and the <u>admitted</u> failure of Berkowitz (through Gazzara or otherwise) to review its provisions, despite acceptance, affords it no comfort. <u>See, e.g.</u>, <u>Giaccone</u>, 133 F. Supp. 3d at 677 (citations omitted) (binding the plaintiffs to certain contractual provisions, despite their failure to read the provisions); <u>Riverside Chiropractic Grp. v. Mercury Ins. Co.</u>, 961 A.2d 21, 27 (N.J. Super. Ct. App. Div. 2008) (quoting <u>Henningsen v. Bloomfield Motors, Inc.</u>, 161 A.2d 69, 84 (N.J. 1960) ("As a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'"); <u>Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds</u>, 250 F.R.D. 171, 175 (D.N.J. 2008) (noting that the failure to read an agreement "does not relieve" a party of the "liability assumed thereunder")). Stated differently, Berkowitz's subjective failings, standing alone, fail to create a genuine issue of material fact on the question of its assent to the General Terms.

For all of these reasons, the Court finds that Berkowitz agreed to the Quotation subject to the General Terms, and thus that the General Terms apply to this action. With that conclusion, the Court turns to the enforceability of the forum selection clause imbedded within these provisions.

17

**2.    The Forum Selection Clause is Valid, Enforceable, and Mandatory**

Robust authority has endorsed the enforcement of forum selection clauses, unless the clause resulted from fraud, violates public policy, or requires resolution in a seriously inconvenient forum.  See, e.g., M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 202 (3d Cir. 1983), overruled on other grounds by, Lauro Lines v. Chasser, 490 U.S. 495 (1989); MoneyGram Payment Sys. v. Consorcio Oriental, S.A., 65 F. App'x 844, 846 (3d Cir. 2003).

Plaintiff in this instance makes no argument that the forum selection clause resulted from overreaching or fraud, or that enforcement would be contrary to public policy.  See Coastal Steel Corp., 709 F.2d at 202.  Rather, Berkowitz relies entirely upon the notion that enforcement would "be unreasonable under the circumstances presented" here.  (Pl.'s Opp'n at 4.) More specifically, Berkowitz claims, with scant detail, that the resolution of this action "in Ohio would seriously burden [its] ability to litigate."[16]  (Id. at 7.)  Nevertheless, because Glasstech and the relevant technician call Ohio home, Berkowitz

---

[16] In addition, Berkowitz challenges the forum-selection clause on the grounds that it never agreed to the provisions, and based upon the supposedly ever-changing nature of Glasstech's forum-selection provision.  (See Pl.'s Opp'n at 1-3.)  Berkowitz's positions, however, miss the mark for the reasons expressed above.

18

can hardly claim _serious_ inconvenience in having to litigate this action in Defendant's principal forum.  (_See_ Def.'s Br. at 22; Notice of Removal at ¶ 7 (describing Glasstech as "a Delaware Corporation with its principal place of business in Perrysburg, Ohio").)

Beyond that, the language of the forum selection clause admits of no other result than that the courts of Toledo, Ohio constitute the exclusive forum for any litigation arising out of the parties' service agreement.  Indeed, the disputed clause provides that, "[e]ach party hereby (1) irrevocably submits to the jurisdiction of the state or federal courts located in Toledo, Ohio, U.S.A., (2) agrees that any action, suit or proceeding arising from or relating to this Agreement shall be brought **only** in such Courts, and (3) waives any objections based to personal jurisdiction, venue or forum _non conveniens_ [, and that]."  (Ex. C to Walbolt Cert. at ¶ 11 (emphasis added).)  In other words, the forum selection clause squarely explains and mandates, in relevant part, that this action be pursued _exclusively_ in the state or federal courts located in Toledo, Ohio, not New Jersey.[17]  _See Int'l Bus. Software Solutions, Inc._

---

[17] A permissive forum selection clause, by contrast, "'merely specifies the court empowered to hear litigation" and, in effect, "'allows parties to air any dispute in that court without requiring them to do so.'" _Int'l Bus. Software Solutions, Inc._, 440 F. Supp. 2d at 363 n.2 (quoting _S & D Coffee, Inc._, 995 F. Supp. at 609).

v. Sail Labs Tech., 440 F. Supp. 2d 357, 363 n.1 (D.N.J. 2006)
(citation omitted) (explaining that a mandatory forum selection
"'identifies a particular state or court as having exclusive
jurisdiction over disputes arising out of parties' contract and
their contractual relationship'"); see also Dawes v. Publish Am.
LLP, 563 F. App'x 117, 118 (3d Cir. 2014) (same); Wall St.
Aubrey Golf, LLC v. Aubrey, 189 F. App'x 82, 85-86 (3d Cir.
2006) (explaining that the inclusion of the word "shall"
establishes a mandatory forum selection clause).

For all of these reasons, the Court finds the forum
selection clause valid, mandatory, and enforceable.  Compare
Wall St. Aubrey Golf, LLC, 189 F. App'x at 85 (finding the
following clause unambiguously mandatory: "This Lease shall be
construed in accordance with the laws of the Commonwealth of
Pennsylvania, with venue laid in Butler County, Pennsylvania"),
with Radian Guaranty Inc. v. Bolen, 18 F. Supp. 3d 635, 650
(E.D. Pa. 2014) (finding permissive a forum selection clause
providing that, "any legal proceeding arising out of this
paragraph may be brought in the United States District Court for
the Eastern District of Pennsylvania") (emphasis in original).

Nevertheless, in order to determine whether transfer is
warranted, the Court must still engage in a modified Section
1404(a) analysis.

**B.    The Application Section 1404(a) Considerations
        Militate in Favor of Transfer**

In considering a Section 1404(a) motion,[18] a district court
must ordinarily weigh an array of private and public-interest
factors, in order to determine whether a transfer would further
"the convenience of parties and witnesses" and "the interest of
justice."  28 U.S.C. § 1404(a).[19]  In Atlantic Marine
Construction Co., Inc. v. U.S. District Court for Western
District of Texas, ___ U.S. ____, 134 S.Ct 568, 582 (2013),
however, the Supreme Court explained that a mandatory forum-
selection clause, as here, must "'be given controlling weight in
all but the most exceptional cases."  Id. at 581.

This directive requires federal district courts, in turn,
"to adjust their usual § 1404(a) analysis in three ways."  Id.
at 581.  **First**, "the plaintiff's choice of forum merits no
weight," and the plaintiff bears instead "the burden of
establishing that transfer" would be "unwarranted."  Id.
**Second**, the parties "waive" any challenge on convenience

---

[18] In diversity cases, as here, federal law governs the
contractual effect of forum selection clauses.  See Jumara v.
State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).
[19] In connection with a Section 1404(a) motion, the Court must
determine, at the outset, whether the proposed alternative forum
(here, Ohio) constitutes a venue where the action could
originally have been brought.  In this case, though, the inquiry
proves relatively straightforward, because Glasstech resides in
Ohio, and the contractual backdrop for this litigation occurred
in exchanges between an individual housed in Ohio and one in New
Jersey.  Thus, this action could originally have been brought in
Ohio.  See 28 U.S.C. § 1391(b).

grounds, either "for themselves or their witnesses, or for their pursuit of the litigation." Id. As a result, a court must "deem the private-interest factors[20] to weigh <u>entirely</u> in favor of the preselected forum." Id. at 582 (emphasis added). **Third**, when a party "flouts" its contractual obligation under the forum selection clause, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Id. (citation omitted).

In other words, the presence of a valid, mandatory forum selection clause in this instance radically alters the relevant analytical framework, by narrowing the transfer inquiry to <u>only</u> the public-interest factors.[21] See generally id. However, because the private-interest "factors will rarely defeat a transfer motion," the "forum-selection clause should control" in all but the most "unusual cases." Id.

---

[20] The private-interests factors specifically include:

> [1] plaintiff's forum preference; [2] whether the claim arose elsewhere; [3] the convenience of the parties; [4] the convenience of the witnesses; and [5] the location of books and records.

Fernandes, ___ F. Supp. 3d ____, 2015 WL 9272878, at *6-*7 (citations omitted).

[21] The narrowness of this inquiry, in turn, means that the Court confronts a contextually-different set of circumstances than the parties presented (almost two years ago) in the initial transfer decision, in which the Court weighed the private and public-interest factors without the benefit of a mandatory and enforceable forum selection clause.

Therefore, the Court will briefly address each of the public-interest factors, which specifically include:

> [1] the enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] relative court congestion; [4] the local interest, if any, in deciding local controversies at home; [5] the public policies of the fora; and [6] the relative familiarity of the trial judge with the applicable law.

See Jumara, 55 F.3d at 879-80 (citations omitted); see also Fernandes, ___ F. Supp. 3d ____, 2015 WL 9272878, at *6-*7 (citations omitted).

In this case, the parties – and especially Berkowitz – devote little attention to the private-interest factors. (See, e.g., Def.'s Opp'n.)  Indeed, Berkowitz makes no argument on issues of judgment enforceability or practical considerations, nor does it identify any localized policy or interest that strongly supports the retention of this action in New Jersey. Rather, Plaintiff points to issues of convenience and to the New Jersey location of its damaged facility—considerations that pertain only to the inapplicable private-interest factors. (See, e.g., id. at 6, 7 (rearguing the private-interest factors based, primarily, upon the initial transfer decision).)

The relevant public-interest factors do not tip the scales in Plaintiff's favor.  Indeed, no single factor squarely supports Berkowitz's position.

23

The Court recognizes the initial practical appeal of a trial in this District, given the location of the damaged facility, the furnace, and presumably certain witnesses and/or documents.  Nevertheless, because the relevant service technician resides in Ohio, some efficiencies would necessarily flow from pursuing this litigation in a forum localized to the technician and to Glasstech's overall business.  Similarly, in view of the involvement of entities and individuals local to both forums, the Court cannot find that either forum holds a stronger interest or public policy over the resolution of this negligence action.[22]

Turning then to the remaining public interest factors—the enforceability of judgment, relative court congestion, and state law familiarity-the Court finds that these factors too rest in equipoise.  Indeed, (1) a federal judgment would be equally enforceable in either District, (2) relative court congestion holds minimal weight in the overall transfer inquiry (and cannot be considered conclusive here), and (3) it remains to be determined (through a choice-of-law inquiry) whether New Jersey or Ohio law will govern the substantive claims advanced by Berkowitz.

---

[22] Nor has either party identified any qualifying interest and/or public policy.

24

For all of these reasons, and based largely upon the forum-selection clause, the Court finds the transfer of this action to the Northern District of Ohio appropriate under 28 U.S.C. § 1404(a).  See, e.g., Navetta v. KIS Career Sch., Inc., No. 14-5724, 2016 WL 2346756, at *5 (E.D. Pa. May 4, 2016) (granting a transfer motion under similar circumstances); Asphalt Paving Sys., Inc. v. Gen. Combustion Corp., No. 13-7318, 2015 WL 167378, at *7 (D.N.J. Jan. 13, 2015) (same).

**V.    CONCLUSION**

In sum, Defendant's motion to transfer will be granted, and this action will be transferred to the Northern District of Ohio.[23]  The accompanying Order will be entered.


  **May 17, 2016**               **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                   Chief U.S. District Judge

---

[23] Although this Court has some concern that the contractual limitations provision of the General Terms might ultimately bar this action, the transferee court in Toledo, Ohio will be in a better position to address the existence and/or application of any reasonableness limitations or equitable defenses to that provision under Ohio law.  Aside from that general observation, though, the Court need not reach Defendant's alternative request for summary judgment.