UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Selective Way Insurance Company,                    Case No. 16-cv-1177

        Plaintiff

   v.                                              MEMORANDUM OPINION

Glasstech, Inc., et al.,

        Defendants


## I.    Introduction

Before me is Defendant Glasstech, Inc.'s motion for summary judgment. (Doc. No. 40). Plaintiff Selective Way Insurance Company opposed the motion (Doc. No. 42), and Defendant Glasstech, Inc. replied. (Doc. No. 43).

## II.    Background

In 1999, Defendant Glasstech, Inc. installed a heat treating oven at J.E. Berkowitz, L.P. ("JEB")'s Westville, New Jersey facility. (Doc. No. 40-9 at 2). Over the course of the next few years, if JEB had problems with the piece of equipment, it would contact Glasstech for service and repairs. (Doc. No. 40-7 at 2-3).

On September 10, 2012, JEB contacted Glasstech because the heat treating oven was not working properly. *Id.* JEB maintenance employees attempted to fix the oven themselves, with the instruction of a Glasstech employee over the phone, but were unsuccessful. *Id.* at 2-4. JEB requested Glasstech perform an emergency service trip to the site. *Id.* In response to the request, Michael Walbolt of Glasstech emailed a quotation for the service trip to JEB Maintenance Manager, Michael Gazzara. (Doc. No. 40-8). Attached to the email were: (1) the quotation itself

("Quotation"), labeled "Q0007272.pdf"; and (2) the General Terms and Conditions of Sale, labeled "GENERAL TERMS AND CONDITIONS OF SALE 020212.pdf." *Id.* JEB accepted the Quotation and Glasstech began work the next day. *Id.* at 12. Unfortunately, while a Glasstech employee was troubleshooting the oven, an explosion occurred and caused damage to JEB's property. (Doc. No. 1 at 10).

JEB's insurer, Plaintiff Selective Way Insurance Company, paid for the damage and, as subrogee, filed suit against Glasstech on April 23, 2014 in the Superior Court of New Jersey. *Id.* at 9-12. After being removed to the United States District Court of the District of New Jersey, the case was transferred to this court pursuant to the forum selection clause contained in the General Terms and Conditions. (Doc. No. 29).

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. DISCUSSION

As properly determined by my colleague in the District of New Jersey, the forum selection clause of the General Terms and Conditions mandates that Ohio law be applied in this contract dispute. (Doc. No. 29). Under Ohio law, summary judgment may be granted only when the "contract is clear and unambiguous." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15

2

Ohio St. 3d 321, 322 (1984). "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245-46 (1978).

A. Applicability of the 2012 General Terms and Conditions

Although addressed previously in the District of New Jersey, Selective Way argues for a second time that the 2012 version of the General Terms and Conditions containing the shortened limitation period should not apply. In support, Selective Way asserts that JEB did not open or read the attachment and, in the prior course of dealings between JEB and Glasstech, previous versions of the General Terms and Conditions did not include the shortened statute of limitations.

Like New Jersey, Ohio law also recognizes the doctrine of incorporation by reference, under which a document referenced in the contract becomes part of the contract. *See, e.g.*, *Volovetz v. Tremco Barrier Solutions*, 74 N.E.3d 743, 751-52 (Ohio Ct. App. 2016); *Mohmed v. Certified Oil Corp.*, 37 N.E.3d 814, 821-22 (Ohio Ct. App. 2015); *KeyBank Nat'l Ass'n v. Sw. Greens of Ohio, Inc.*, 988 N.E.2d 32, 39 (Ohio Ct. App. 2013); *Christie v. GMS Mgnt. Co.*, 124 Ohio App. 3d 84, 88 (1997). To incorporate a document, the contract "must explicitly, or at least precisely, identify the written material begin [sic] incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract." *Volovetz*, 74 N.E.3d at 751-52 (quoting *Northrop v. Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1345 (Fed. Cir. 2008)); *see also Int'l Ass'n of Machinists & Aerospace Workers v. ISP Chems., Inc.*, 261 F. App'x 841, 848 (6th Cir. 2008) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("[I]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship.")).

3

Documents, such as the General Terms and Conditions at issue here, are regularly incorporated into contracts. The court in *Morgantown Machine & Hydraulics of Ohio, Inc. v. American Piping Products, Inc.*, No. 5:15-cv-1310, 2016 WL 705261 (N.D. Ohio Feb. 23, 2016), recently confronted a similar situation and found that a price quotation incorporated the Standard Terms & Conditions of Sale with the statement, "This quotation and all sales resulting from it, are subject to our Standard Terms & Conditions of Sale and available upon your request." *Morgantown, supra,* at *2, *4-*5. The Standard Terms & Conditions at issue were not provided directly to the customer, but instead were on the seller's website, also referenced on the price quotation. *Id.* The court rejected the customer's argument that "it never saw the terms and conditions, was never supplied a copy, was never told to review them, was not asked to agree to them, and never looked at them on the website" as "somewhat disingenuous." *Id.* at *4-*5. The court ultimately held that the Standard Terms & Conditions were incorporated since "the terms incorporated by reference were available on a website that was specifically referenced on the forms exchanged electronically between the parties." *Id.* at *5 (citing other courts who "applied traditional contract law to find terms and conditions located on a company's website to be incorporated into a contract where they were clearly referred to and could be easily located by the challenging party, especially where that party is a commercial entity.").

In this case, JEB requested services from Glasstech. Glasstech emailed JEB a price quotation and attached two documents to the email, the one-page Quotation itself and the two-page General Terms and Conditions, labeled "GENERAL TERMS AND CONDITIONS OF SALE 020212.pdf." (Doc. No. 40-8 at 5). The Quotation states,

> UNLESS OTHERWISE SPECIFIED BELOW, ALL ORDERS ARE SUBJECT TO THE TERMS AND CONDITIONS STATED IN GLASSTECH'S GENERAL TERMS AND CONDITIONS OF SALE.

*Id.* at 7. The same "subject to" language that was found to incorporate the document in *Morgantown* was also used to incorporate the General Terms and Conditions here. But, unlike the customer in

4

*Morgantown* who was directed to a website, JEB was provided with a copy of the applicable General Terms and Conditions as attachment to the quotation. The language of the Quotation explicitly and unambiguously incorporates the General Terms and Conditions. Any alleged confusion as to which version of the document applied is extinguished by the attachment of *only* the 2012 version to the Quotation that was clearly labeled. The Quotation and incorporated February 2, 2012 version of the General Terms and Conditions form the contract between JEB and Glasstech.

As a part of the contract, Selective Way is not excused from being bound by the terms of the General Terms and Conditions simply because it did not read the document. As a fundamental principle of contract law,

> It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*Upton v. Triblock*, 91 U.S. 45, 50 (1875). Contrary to Selective Way's argument, there is no requirement under the law that would excuse a sophisticated business entity from reading a new contract simply because of a prior course of dealing. Nor is there a requirement that a party to a contract specifically notify another of a provision contained in a contract. *See ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 503 (1998) ("The law does not require that each aspect of a contract be explained orally to a party prior to signing."); *Morgantown*, *supra*, at *4-*5 (rejecting the argument that a party should be excused from being bound because it "was never told to review" the conditions by the other party). JEB had a duty to read the entire contract before agreeing to the terms. *See, e.g.*, *Mohmed*, 37 N.E.3d at 821-22 ("The duty is upon plaintiffs to read the Supply Agreement [expressly incorporating an Addendum] before signing it."). The failure to do so is not grounds to excuse Selective Way from being bound to the shortened statute of limitations. As a matter of law, Selective Way is bound to the terms of the 2012 General Terms and Conditions.

B.  Shortened Statute of Limitations

"[T]he parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one." *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St. 3d 403, 405 (2005); *see also Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947); *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St. 3d 619 (1994). A contractually shortened limitation period is not limited to contract claims, but also applies to claims brought pursuant to the contract. *See, e.g., Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352, 357 (6th Cir. 2004) (employment law claim); *Hoskins v. DaimlerChrysler Corp.*, No. 3:03cv338, 2005 WL 5588084, at *4 (S.D. Ohio Mar. 30, 2005) (intentional tort claim). Selective Way argues that, even if the General Terms and Conditions apply as part of the contract, the shortened limitation period contained therein should not apply here.

1.  Applicability to Tort Law Claims

Selective Way asserts that its first and second causes of action of negligence, recklessness, and carelessness are tort law claims, independent of the contract. To support its argument, Selective Way cites the provision of the General Terms and Conditions which states, "Any action against [Glasstech] based upon [Glasstech]'s alleged breach of its obligations must be commenced within eighteen (18) months after [JEB]'s receipt of the Equipment or the performance of the Services." (Doc. No. 40-8 at 10). Selective Way appears to argue that "breach of obligations" encompasses only contractual obligations. But, reading the contract as a whole, which refers to limitation of liability "REGARDLESS OF WHETHER THE CLAIM IS BASED ON BREACH OF CONTRACT OR TORT," I find "breach of obligations" contemplates all obligations or duties, sounding in tort and contract law. *Id.* at 9.

Further, although Selective Way correctly states that a tort claim may be asserted when "a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed," it asserts no such independent duty under Ohio tort law. *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976) ("The tort liability of parties to a

6

contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation.") (citing *Bowman v. Goldman Bros. Co.*, 109 N.E.2d 556, 557 (Ohio Ct. App. 1952)). Instead, Selective Way states, "This action is not based on any alleged breach of obligation between the parties." (Doc. No. 42 at 10). But to succeed on a claim of negligence there must be both a duty, or obligation between the parties, and a breach of that duty. Without an independent duty, there may be no tort claim regardless of any recklessness or carelessness as asserted by Selective Way. *See Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276 (1983) ("[I]t is well established in Ohio that it is no tort to breach a contract, regardless of motive. Rather, the liability arises from the breach of the positive legal duty imposed by law due to the relationships of the parties.") (citations omitted). Because Selective Way asserts no such duty owed by Glasstech to JEB, independent of the contract, the claims are breach of contract claims, governed by the General Terms and Conditions.

2.  Reasonableness of the Shortened Limitations Period

Since Selective Way's tort law claims fall within the terms of the contract, the only remaining question is whether the shortened limitation period is reasonable. Although applied in the employment context, the *Thurman* court sets out factors to be considered, finding a shortened limitation period reasonable when:

> (1) the claimant has sufficient opportunity to investigate and file an action; (2) the time is not so short as to work a practical abrogation of the right of action; and (3) the action is not barred before the loss or damage can be ascertained.

397 F.3d at 357 (citation omitted); *see also Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc.*, 116 Ohio App.3d 692, 697 (Ct. App. 1996) *appeal denied*, 78 Ohio St.3d 1467 (1997) (finding a one-year period reasonable considering unambiguous contract language, how long the party knew of the breach, and how long it would have taken to discover the breach).

The statute of limitations was shortened to eighteen months. Glasstech was known to be the cause of the accident from the day it occurred on September 11, 2012. Selective Way, as

7

subrogee of JEB, had eighteen months to file an action and was able to do so twelve days after the shortened limitation period of had elapsed.  Selective Way does not assert any circumstances that delayed filing the cause of action within the shortened limitation period.  Instead, it argues that the shortened limitation period is unreasonable because it lacked of knowledge of the provision in the contract.  But, as noted above, ignorance of the contents of a contract is no excuse.  Since there is no evidence to suggest otherwise, I find the eighteen month statute of limitations reasonable and grant summary judgment to Glasstech.

V.  CONCLUSION

For the foregoing reasons, Glasstech's motion for summary judgment is granted.  (Doc. No. 40).  Selective Way's claims are barred by the shortened limitation period contained in the General Terms and Conditions.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge